| | |
|---|---|
| DIANNA OLESON and ANN ZARCZYNSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br> v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>   Defendant. | Case No.: 20-cv-753<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Dianna Oleson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff a debt incurred for personal, family, or household purposes.

6. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

7. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. MCM's website contains an "FAQ" webpage, which states:

> **Who is Midland Credit Management (MCM)?**
>
> Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations. MCM has serviced millions of collection accounts over the years with the goal of helping consumers achieve financial freedom. MCM works with consumers and also partners with Midland Funding LLC, one of the nation's largest buyers of unpaid debt.

https://www.midlandcredit.com/faqs/ (last accessed November 27, 2019)

10. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

11. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g.*, *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir. 2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it

2

Case 2:20-cv-00753-NJ    Filed 05/19/20    Page 2 of 14    Document 1

is a debt collector. Who actually obtains the payment or how they do so is of no moment.");
*Tepper v. Amos Fin., LLC*, 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordge v. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

12.     The primary purpose of MCM's business, and MCM's principal purpose, is the collection of consumer debts.

13.     MCM is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for MCM's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

14.     According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Encore paid less than 10 cents on the

dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

15. MCM's role generally is to service defaulted consumer debts purchased and held by MCM and its affiliates. MCM uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts.

16. Neither MCM nor any of its affiliates purchase defaulted consumer debts with the purpose of selling them at a profit. *See, e.g.*, https://www.midlandcreditonline.com/wp-content/uploads/2015/08/Consumer-Bill-of-Rights.pdf (last accessed: February 25, 2019) ("We do not resell accounts to third parties in the ordinary course of our business.").

17. Even when acting as the purchaser of defaulted consumer debts, the primary purpose of Midland is debt collection. *See, e.g., Barbato*, 916 F.3d at 267; *Mitchell*, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

18. MCM, along with its affiliate Midland Funding, LLC ("Midland Funding"), by itself and through its attorneys, files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows MCM as a named party in over 578 small claims lawsuits against Wisconsin consumers so far in 2020 in Milwaukee County alone. Upon information and belief, all or almost all of these actions were filed to collect consumer debt from Wisconsin residents.

19. Upon information and belief, when MCM obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

20. MCM is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

21. On or around May 20, 2019, MCM mailed a debt collection letter to Plaintiff Oleson regarding an alleged debt owed to MCM, with an "Original Creditor" listed as "SYNCHRONY BANK (USA) N.A." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

22. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred by use of an "Amazon" branded credit card, which was used only for personal, family, or household, purposes, including purchases of household goods from Amazon.com.

23. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by a computer, with the information specific to Plaintiff Oleson inserted by the computer.

24. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

25. <u>Exhibit A</u> contains contradictory and confusing representations about the identity of the creditor to whom the debt is owed.

26. The header of <u>Exhibit A</u> states that the "Current Owner" is "Midland Credit Management, Inc.":

| Account Details | |
|---|---|
| Original Creditor | SYNCHRONY BANK |
| Original Account Number | xxxxxxxxxxxx7799 |
| Current Servicer | Midland Credit Management, Inc. |
| MCM Account Number | ▮▮▮▮7489 |
| Current Owner | Midland Credit Management, Inc. |
| Current Balance | $1,237.82 |

5

27.     The reverse side of Exhibit A states that MCM Credit Management, Inc. is the "Current Creditor" and "*The sole owner of this debt*":

| Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| Basic Information | | | |
| Original Creditor | SYNCHRONY BANK | MCM Account Number | 7489 |
| Original Account Number | xxxxxxxxxxxx7799 | Charge-Off Date | 2/26/2019 |
| Current Creditor *The sole owner of this debt* | Midland Credit Management, Inc. | Current Servicer | Midland Credit Management, Inc. |

28.     The body of Exhibit A, however, includes the following representations:

You may request the following information by writing us at 320 E Big Beaver Rd. Suite 300, Troy, MI 48083 and the same will be provided to you at no cost within 30 days of receipt of your written request: 1) An account statement or complete transactional history, as applicable, reflecting your name, the last four digits of the account number at the time of charge-off, and the charge-off balance and/or claimed balance, excluding any post charge off payments; 2) A listing of all prior owners of this account and transfer information; 3) Documentation evidencing the transfer of ownership of the account to Midland Funding; 4) An account statement or complete transactional history reflecting purchase, payment or other actual use of the account or a signed document reflecting the opening of the account at issue; 5) an explanation of how any amount we are seeking to collect in excess of charge-off was calculated; and 6) If applicable, the terms and conditions applicable to the account.

29.     This representation states, in relevant part:

> You may request the following information by writing to us at 320 E Big Beaver Rd. Suite 300, Troy, MI 48083 and the same will be provided to you at no cost within 30 days of receipt of your written request: … 3) Documentation evidencing the transfer of ownership of the account to ***Midland Funding*** ….

30.     On or around May 31, 2019, MCM mailed a debt collection letter to Plaintiff Zarczynksi regarding an alleged debt owed to MCM, with an "Original Creditor" listed as "CAPITAL ONE BANK (USA) N.A." A copy of this letter is attached to this complaint as Exhibit B.

31.     Upon information and belief, the alleged debt referenced in Exhibit B was also incurred by use of a credit card, which was used only for personal, family, or household, purposes.

32.     Upon information and belief, Exhibit B is another form letter, of substantially the same form as Exhibit A, the letter sent to Plaintiff Oleson.

6

33. Like <u>Exhibit A</u>, <u>Exhibit B</u> contains contradictory and confusing representations about the identity of the creditor to whom the debt is owed.

34. The header of <u>Exhibit B</u> states that the "Current Owner" is "Midland Credit Management, Inc.":

| Account Details | |
|---|---|
| Original Creditor | Capital One Bank (USA), N.A. |
| Original Account Number | ████████8037 |
| Current Servicer | Midland Credit Management, Inc. |
| MCM Account Number | ████7603 |
| Current Owner | Midland Funding LLC |
| Current Balance | $4,249.72 |

35. The reverse side of <u>Exhibit B</u> states that MCM Credit Management, Inc. is the "Current Creditor" and "*The sole owner of this debt*":

| Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| Basic Information | | | |
| Original Creditor | Capital One Bank (USA), N.A. | MCM Account Number | ████7603 |
| Original Account Number | ████████8037 | Charge-Off Date | 10-08-2018 |
| Current Creditor *The sole owner of this debt* | Midland Funding LLC | Current Servicer | Midland Credit Management, Inc. |

36. The body of <u>Exhibit B</u>, however, includes the following representations:

You may request the following information by writing us at 320 East Big Beaver Rd Suite 300, Troy, MI 48083 and the same will be provided to you at no cost within 30 days of receipt of your written request: 1) An account statement or complete transactional history, as applicable, reflecting your name, the last four digits of the account number at the time of charge-off, and the charge-off balance and/or claimed balance, excluding any post charge off payments; 2) A listing of all prior owners of this account and transfer information; 3) Documentation evidencing the transfer of ownership of the account to Midland Funding; 4) An account statement or complete transactional history reflecting purchase, payment or other actual use of the account or a signed document reflecting the opening of the account at issue; 5) an explanation of how any amount we are seeking to collect in excess of charge-off was calculated; and 6) If applicable, the terms and conditions applicable to the account.

37. This representation states, in relevant part:

> You may request the following information by writing to us at 320 E Big Beaver Rd. Suite 300, Troy, MI 48083 and the same will be provided to you at no cost within 30 days of receipt of your written request: … 3) Documentation evidencing the transfer of ownership of the account to **Midland Funding** ….

38. The representation that Plaintiffs may request "documentation evidencing transfer of ownership of the account to Midland Funding" is a material representation that "Midland Funding" may also be a creditor of the account. *E.g., Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018).

39. Confusing and misleading representations about the name of the creditor are material misrepresentations because they create the potential for fraud or double-payments. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 324-25 (7th Cir. 2016).

40. For this reason, courts hold that a debt collector must clearly and unequivocally identify the current creditor to whom the debt is owed and "a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing." *Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3 (E.D. Wis. Aug. 25, 2006); *see also, e.g., Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 133 (E.D.N.Y. 2007); *Walls v. United Collection Bureau*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079, at *5 (N.D. Ill. May 16, 2012); *Deschaine v. Nat'l Enter. Sys.*, No. 12-cv-50416, 2013 U.S. Dist. LEXIS 31349, at *3-5 (N.D. Ill. Mar. 7, 2013); *Aribal v. GMAC Mortg.*, No. 12-c-9735, 2013 U.S. Dist. LEXIS 105355, at *12-13 (N.D. Ill. July 29, 2013); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *3 (N.D. Ill. Oct. 21, 2011); *Pardo v. Allied Interstate, LLC*, No. 14-cv-1104, 2015 U.S. Dist. LEXIS 125526, at *8-9 (S.D. Ind. Sept. 21, 2015); *Long v. Fenton & McGarvey Law Firm, P.S.C.*, 223 F. Supp. 3d 773, 778-79 (S.D. Ind. 2016); *Brinkmeier v. Round Two Recovery, LLC*, No. 15-cv-3693, 2016 U.S. Dist. LEXIS 97664, at *4 (E.D.N.Y. July 25, 2016); *Datiz v. Int'l Recovery Assocs.*, No. 15-cv-3549, 2018 U.S. Dist. LEXIS 127196 (E.D.N.Y. July 27, 2018), *adopted by,* 2018 U.S. Dist. LEXIS 163290 (E.D.N.Y. Sept. 24, 2018); *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d

754, 761 (D. Md. 2017); *Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018); *Africano-Domingo v. Miller & Steeno, P.C.*, No. 19-cv-401, 2020 U.S. Dist. LEXIS 7887, at *15-18 (N.D. Ill. Jan. 16, 2020).

41. Plaintiffs were confused and misled by Exhibits A & B.

42. The unsophisticated consumer would be confused and misled by Exhibits A & B.

### *The FDCPA*

43. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long*

9

*v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

10

Case 2:20-cv-00753-NJ   Filed 05/19/20   Page 10 of 14   Document 1

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

45. Plaintiffs who allege that debt collectors engaged in misrepresentations in their dunning letters, including misrepresentations of the character, amount or legal status of any debt, have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); see also *Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his

11

"right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

48. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

49. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

50. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

52. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Exhibits A & B state that MCM is the "current owner," the "current creditor," and "the sole owner of this debt."

54. Exhibits A & B also state that MCM will provide the consumer with "documentation evidencing the transfer of ownership of the account to Midland Funding."

55. <u>Exhibits A & B</u> fail to unequivocally identify the current creditor to whom Plaintiffs' alleged debts are owed.

56. <u>Exhibit A</u> contains representations that are false, deceptive, misleading, confusing, and unfair to the unsophisticated consumer.

57. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

## CLASS ALLEGATIONS

58. Plaintiffs bring this action on behalf of a class, consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent collection letters by MCM in the form of <u>Exhibit A</u> and/or <u>Exhibit B</u> to the complaint in this action, (c) between May 19, 2019 and May 19, 2020, inclusive, (d) that was not returned by the postal service.

59. The class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the class.

60. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A & B</u> violate the FDCPA.

61. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

62. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

63. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

64. Plaintiff hereby demands a trial by jury.

13

Case 2:20-cv-00753-NJ    Filed 05/19/20    Page 13 of 14    Document 1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: May 19, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com